IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) No. 4:24-CR-00107-MTS |
| | ) |
| SYLVESTER CLAY, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**SENTENCING MEMORANDUM**

COMES NOW defendant Sylvester Clay, by and through counsel, Assistant Federal Public Defender Tyler Morgan, and respectfully requests that this Court follow the joint recommendation of the parties and sentence Mr. Clay to a term of 156 months—13 years—in the Bureau of Prisons, to run concurrently with his supervised release revocation in Case No. 4:17-CR-00038-MTS.  Mr. Clay believes that this sentence—the most substantial sentence that Mr. Clay has ever received—would be sufficient, but not greater than necessary, to comply with the sentencing factors enumerated in 18 U.S.C. § 3553(a).  Counsel will address a few of those factors below.

**Mr. Clay's History and Characteristics**

Drugs have played a role in Mr. Clay's life for as long as he can remember.  He was born to two parents who abused drugs throughout his childhood and adolescence.  Mr. Clay's father would use drugs and then frequently abuse Mr. Clay's mother in front of him.  Sometimes his father would turn on him in a drug-fueled range and begin to abuse him too.  This drug use and violence occurred with regularity until his

parent's divorced when Mr. Clay was eight.  After his mother left his father, she soon fell into the grasp of drug addiction.  Having both parents addicted to drugs caused Mr. Clay to have very little oversight for large chunks of his upbringing.  Because there was no one to steer him in the appropriate direction during these critical years, Mr. Clay sought refuge in a place that he felt desired and comfortable—in the streets of St. Louis.

By the time he was 11, Mr. Clay believed he needed to "grow up" and help support the family by selling drugs.  At that time, Mr. Clay spent more time in the streets than he did at home or at school.  That was reflected in his education—the furthest Mr. Clay went was the ninth grade, and he was a 17-year-old ninth grader.  Mr. Clay cared more about street life than anything else, and eventually he became a victim to it.  By the time he was 14 years old, Mr. Clay became addicted to various drugs, including marijuana and cocaine.  His addiction tormented him for the next 35 years and directly influenced his involvement in the criminal legal system.  His very first charge was a juvenile adjudication for Possession of a Controlled Substance when he was 15.

Over the next several years, Mr. Clay continued to have brushes with the law, and he received various sentences ranging from probation to a few years in prison.  It wasn't until 2007 that he received the first sentence that put him in prison for more than three years at a time.  He received a 77-month sentence for being a Felon in

Possession of a Firearm.  It was during this term of incarceration that Mr. Clay began trying to figure out how to chart a positive course for the rest of his life.  While incarcerated, he earned his GED.  He got married.  He wanted better for himself than the life he had lived.  However, he struggled to shake what had developed into a significant drug addiction.  He was revoked for a laws violation based on possessing heroin in 2013.  However, upon release he was able to complete a year of supervision, and his supervision was discharged.

Despite trying to make improvements, Mr. Clay once again chose the wrong path, and in 2017 he received a 72-month sentence for being a Felon in Possession of a Firearm.  Knowing that another chunk of his life would be spent in prison, Mr. Clay endeavored to work on himself even more to become a better husband, father, and member of the community when he was released.  During his second term of federal incarceration, Mr. Clay completed numerous drug education and treatment courses, 375 hours in plumbic/electric training, and 250 hours in building maintenance training, among other things.  He attempted to put that training to use upon his release by working to rehab a property that he and his wife owned together.  From his release until his arrest in the instant offense—almost two years—Mr. Clay was largely compliant, although he continued to struggle with his near-lifelong drug addiction.  At the time of his arrest, he was approximately three months away from discharging his term of supervised release.

3

It goes without saying that Mr. Clay has a long criminal history.  He has been to prison before, but the requested sentence is more than double the longest term of uninterrupted incarceration that Mr. Clay has ever served.  A sentence of 156 months is a substantial sentence, and his history and characteristics justify it, even more so at his age of 51 years old.

**Nature and Circumstances of the Offense**

It is undisputed that the nature and circumstances of this offense are serious. Mr. Clay admitted to distributing fentanyl to the victim who died as a direct result. We view fentanyl in the way that we do as a country precisely because of the risk involved with its unregulated use.  That risk was unfortunately realized here.  Mr. Clay has never made a significant attempt to contest his role in this case.  To the contrary, Mr. Clay has expressed remorse for his actions since very early on in Counsel's representation, and he will continue to be remorseful for the rest of his life. The one thing that Mr. Clay wants to make clear for this Court is that he did not intend for this to be the outcome of his actions.  He acknowledges the inherent risk that he undertook by providing fentanyl to the victim, but he did not set out to cause the victim harm.

A sentence of 156 months would factor in the incredibly serious nature and circumstances in the offense by providing significant punishment to Mr. Clay for his role while acknowledging that the victim's death was a completely unintended

consequence of Mr. Clay's actions.

**Remaining Factors**

The requested sentence would also satisfy the remaining sentencing factors. A 156-month sentence—again more than double the most significant sentence Mr. Clay has ever served—would reflect the seriousness of the offense, promote respect for the law and provide just punishment for this offense. It should be noted that the victim's loved ones agree. Doc. # 43. Furthermore, 13 years away from his family— particularly his aging parents, both of whom may not be here when Mr. Clay is released—would adequately deter Mr. Clay from further criminal conduct in the future. Additionally, the requested sentence would provide Mr. Clay with more opportunities to obtain vocational and educational training to prepare him to be a more productive citizen upon his release. More importantly, this sentence would provide him with much needed drug abuse treatment so that Mr. Clay can finally confront and beat the demons of addiction that have tormented him for most of his life.

**CONCLUSION**

WHEREFORE, for the reasons stated above, Counsel respectfully requests that this Court impose the requested sentence.

Respectfully submitted,

/s/ *Tyler Keith Morgan*
TYLER KEITH MORGAN

Assistant Federal Public Defender
1010 Market Street, Suite 200
St. Louis, Missouri 63101
Telephone: (314) 241-1255
Fax: (314) 421-3177
E-mail: Tyler_Morgan@fd.org
ATTORNEY FOR DEFENDANT

## CERTIFICATE OF SERVICE

I hereby certify that on February 24, 2025, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon Jerome McDonald, Assistant United States Attorney.

/s/*Tyler Keith Morgan*
TYLER KEITH MORGAN
Assistant Federal Public Defender